Michael YAUGER and Brenda Yauger, Plaintiffs-Appellants-Petitioners,

v.

SKIING ENTERPRISES, INC., d/b/a Hidden Valley Ski Area, a Wisconsin corporation and Investors Insurance Company of America, a foreign corporation, Defendants-Respondents.

Supreme Court

*No. 94–2683. Oral argument September 4, 1996.—Decided December 19, 1996.*

(Also reported in 557 N.W.2d 60.)

For the plaintiffs-appellants-petitioners there were briefs by *Gary L. Bendix, John M. Bruce* and *Savage, Gregorski, Webster, Stangel, Bendix & Bruce, S.C.*, Manitowoc and oral argument by *John M. Bruce*.

■■■■■■■■■■■■■■■

For the defendants-respondents there was a brief by *Thomas B. Hartley* and *Guttormsen, Hartley & Guttormsen*, Kenosha and oral argument by *Thomas B. Hartley*.

Amicus curiae brief was filed by *Robert L. Jaskulski* and *Domnitz, Mawicke, Goisman & Rosenberg, S.C.*, Milwaukee for the Wisconsin Academy of Trial Lawyers.

Amicus curiae brief was filed by *Gregory J. Strasser* and *Terwilliger, Wakeen, Piehler & Conway, S.C.*, Wausau for the Civil Trial Counsel of Wisconsin.

WILLIAM A. BABLITCH, J. Michael and Brenda Yauger (the Yaugers), seek review of a court of appeals' decision holding that a liability waiver signed by Michael Yauger effectively relieved Skiing Enterprises, Inc., d/b/a/ Hidden Valley (Hidden Valley) of liability for its alleged negligence in the death of the Yauger's then eleven-year-old daughter, Tara. Hidden Valley argues that the exculpatory clause unambiguously relieves them from liability for the type of accident which gave rise to this litigation. The Yaugers argue that the ambiguity in the language of the exculpatory contract renders it unenforceable, and therefore it does not protect Hidden Valley from a negligence claim. We conclude that the exculpatory contract signed by Michael Yauger is void as against public policy for two reasons: (1) it failed to clearly, unambiguously, and unmistakably explain to him that he was accepting the risk of Hidden Valley's negligence; (2) the form looked at in its entirety failed to alert the signer to the nature and significance of the document being signed. Accordingly, we reverse and remand.

The relevant facts are not in dispute. On October 8, 1992, Michael Yauger purchased a 1992-93 season family ski pass at Hidden Valley's ski shop. The application form asked for the name, age, and relationship of his family members. He filled in the names of his daughters, eight-year-old Felicia, and ten-year-old Tara, and his wife, Brenda Yauger. Immediately following the space provided for this information was the clause in question (see Appendix for reproduced application form). It provided:

> In support of this application for membership, I agree that:
>
> 1.  There are certain inherent risks in skiing and that we agree to hold Hidden Valley Ski Area/Skiing Enterprises Inc. harmless on account of any injury incurred by me or my Family member on the Hidden Valley Ski Area premises.

There was nothing conspicuous about the paragraph containing the waiver. It was one paragraph in a form containing five separate paragraphs. Although the waiver paragraph was the first paragraph of text, it did not stand out from the rest of the form in any manner. It did not require a separate signature.

On March 7, 1993, Tara was skiing at Hidden Valley Ski Area when she allegedly collided with the concrete base of a chair lift tower at the end of a ski run. She died from injuries sustained in the collision.

The Yaugers filed a wrongful death suit in circuit court alleging that Hidden Valley negligently failed to pad the side of the lift tower. Hidden Valley filed a motion for summary judgment based upon the exculpatory clause contained in the application for the season family ski pass signed by Michael Yauger. The circuit court for Manitowoc County, Allan J. Deehr, Circuit

Judge, granted the motion for summary judgment, finding the exculpatory clause valid and binding on both Michael and Brenda Yauger. The court of appeals held that the exculpatory contract barred the Yaugers from suing Hidden Valley for negligence, and upheld the summary judgment finding that the term "inherent risks in skiing" plainly and simply described the risk of colliding with a fixed object while skiing. *Yauger v. Skiing Enterprises, Inc.*, 196 Wis. 2d 485, 499, 538 N.W.2d 834 (1995). We disagree.

This case presents one issue: whether, as a matter of public policy, the form Michael Yauger signed law, the form Michael Yauger signed was a valid exculpatory contract that bars the Yauger"s claim against Hidden Valley.

■■■■

In reviewing a decision affirming summary judgment, we apply the same standard of review applied by the circuit court when it granted the motion for summary judgment. *Richards v. Richards*, 181 Wis. 2d 1007, 1011, 513 N.W.2d 118 (1994); *see Dobratz v. Thomson*, 161 Wis. 2d 502, 512-13, 468 N.W.2d 654 (1991)(describing the step by step analysis for reviewing the grant of a summary judgment pursuant to Wis. Stat. § 802.08(2)). If the court finds an exculpatory contract invalid on its face void as against public policy, it will deny the defendant's motion for summary judgment. *Dobratz* at 512-13. Interpretation of a contract is a question of law which we review de novo. *Eder v. Lake Geneva Raceway*, 187 Wis. 2d 596, 610, 523 N.W.2d 429 (1994). If the exculpatory contract is unenforceable void as a matter of law, then it would be inappropriate to grant the defendants' summary judgment motion insofar as there remains a material issue of fact. We conclude that, as a matter of law, the form Michael

Yauger signed was not a valid exculpatory contract void as against public policy and, therefore, the clause does not bar the Yauger's claim against Hidden Valley.

Exculpatory contracts are not favored by the law because they tend to allow conduct below the acceptable standard of care. *Richards*, 181 Wis. 2d at 1015. However, exculpatory contracts are not automatically void and unenforceable. *Id.* Rather, a court closely examines whether such agreements violate public policy and construes them strictly against the party seeking to rely on them. *Id.*

Wisconsin law on exculpatory contracts has recently been thoroughly reviewed. *Richards*; *Dobratz*, 161 Wis. 2d at 514-520; *Arnold v. Shawano County Agr. Society*, 111 Wis. 2d 203, 330 N.W.2d 773 (1983), *overruled on other grounds*, *Green Springs Farms v. Kersten*, 136 Wis. 2d 304, 317, 381 N.W.2d 582 (1985). There is no need to reiterate the basic principles here. An examination of these three most recent cases involving exculpatory contracts as a defense to a negligence action leads us to the conclusion that the form signed by Michael Yauger is an unenforceable exculpatory contract void as against public policy.

These cases, in different ways, involved an exculpatory clause that failed to disclose to the signers exactly what rights they were waiving. In the first case, *Arnold*, the court held an exculpatory contract unenforceable because the accident that occurred was not "within the contemplation of the parties" when they signed the exculpatory agreement. In contrast, in *Dobratz*, the court struck down on summary judgment a broad release on the ground that it was ambiguous and unclear, and that, as a matter of law, no contract was formed. Finally, in *Richards*, the court concluded that the exculpatory contract was void as against pub-

lic policy because its overbroad, general terms created ambiguity and uncertainty as to what the signer was releasing.

The first case involved an accident during a stock car race at a county race track. *Arnold*. The plaintiff, a driver in the race, sustained severe brain damage when, after crashing through the guardrail surrounding the racetrack, racetrack rescue personnel sprayed chemicals into his burning car, creating toxic chemical fumes. As a condition precedent to participating in the race, the driver had signed an agreement releasing defendants from liability from damages "whether caused by the negligence [of defendants] or otherwise" while he was in the "restricted area." *Arnold*, 111 Wis. 2d at 212 (footnote omitted). Concluding that the law does not favor exculpatory contracts, the court closely scrutinized this agreement and strictly construed it against the party seeking to rely on it. *Id.* at 209. The court examined the facts and circumstances of the agreement to determine whether it expressed the intent of the parties with particularity and thus assured certainty to the parties involved. Although this contract specifically referred to the defendants' negligence, the court concluded that while injuries from negligent track maintenance may have been waived, a negligent rescue operation was not within the contemplation of the parties when they executed the agreement and therefore, the contract was unenforceable.

Next, in *Dobratz*, while participating in a water ski show as a member of the Webfooter's Water Ski Club, Mark Dobratz was killed when one of the motorboats in the show ran over him. The circuit court rejected his widow's wrongful death claim because of the exculpatory form signed by Dobratz prior to joining the club.

The form provided: [the signer] "knew the risk and danger to myself and property while upon said premises or while participating or assisting in *this event*, so voluntarily and in reliance, upon my own judgment and ability, and I there by assume all risk for loss, damage or injury (including death) to myself and my property from any cause whatsoever." *Dobratz*, 161 Wis. 2d at 511 (emphasis added).

Holding that the contract was unenforceable, the court explained that because particular provisions in the contract were "very broad and general" it was unclear whether the activities that took place immediately after Mark Dobratz fell into the water and up until the time he was injured were to be included within "the event," or whether, alternatively, they constituted something akin to the rescue operations in *Arnold* that were not clearly covered under the exculpatory contract. Specifically, the court concluded that the contract failed to define several key terms: neither the nature of the activity, nor the location where it was to take place was explained; "this event" was not defined; the type of skiing stunts the participant would be asked to perform were not indicated; and the level of difficulty or dangerousness of the stunts was not explained. *Dobratz*, 161 Wis. 2d at 522. Because the terms in the contract were not clearly defined, the court found that the contract failed to express the intent of the parties with particularity. The court held that the contract was unenforceable due to its ambiguity and uncertainty.

Finally, in *Richards*, in order to accompany her truck driver husband while he worked, Mrs. Richards signed a "Passenger Authorization" form required by her husband's employer, the Monkem Company. The form purported to waive defendants' liability for

"intentional, reckless, and negligent conduct," yet failed to circumscribe the specific time period or specific vehicle to be covered by the waiver. *Richards*, 181 Wis. 2d at 1017. The court concluded that the contract contravened public policy due to a combination of factors: the contract served two purposes; the release was extremely broad and all-inclusive; and the release was in a standardized agreement printed on the company's form. These factors indicated to the court that Mrs. Richards did not have a clear understanding of the form she was signing.

Among the principles that emerge from these cases, two are relevant to our determination in this case. First, the waiver must clearly, unambiguously, and unmistakably inform the signer of what is being waived. Second, the form, looked at in its entirety, must alert the signer to the nature and significance of what is being signed. The waiver in question fails in both respects. Thus, the court finds this waiver void as against public policy under either of these principles.

Addressing the first principle, we conclude that the waiver fails to clearly, unambiguously and unmistakably inform the signer that he is waiving all claims against Hidden Valley due to their negligence. Although Hidden Valley argues that the form unambiguously relieves them from all liability for whatever cause including their own negligence, nowhere in the form does the word "negligence" appear. Indeed, the form fails to exhibit any language expressly indicating Michael Yauger's intent to release Hidden Valley from its own negligence.

Although the contract uses the term "inherent risks in skiing," nowhere in the contract is that term defined. Hidden Valley argues that the type of accident

which led to Tara's injuries, collision with a fixed object, is inherent in the sport of skiing and therefore within the contemplation of the parties. That certainly is a plausible interpretation, but it is not the only plausible interpretation. Equally plausible is that the effect of the "inherent risks" language was sufficient only to negate the possibility of a strict liability claim based on an inherently dangerous activity, or, again equally plausible, that such term referred only to the hidden dangers of skiing not attributable to the owner's negligence.

The ambiguity of the phrase, "inherent risks of skiing," is seen in a review of other cases interpreting this term. The highest court of New Jersey defined "inherent risks of skiing" as those risks that "cannot be removed through the exercise of due care if the sport is to be enjoyed." *Brett v. Great American Recreation, Inc.* 677 A.2d 705, 715 (N.J. 1996)(interpreting the New Jersey Ski Statute). The essence of the Yauger's tort claim is that the danger from the lift tower could have been removed by placing padding around the entire lift tower. Similarly, the Supreme Court of Vermont expressly found that a ski owner's negligence is not an inherent risk of skiing. *Dalury v. S-K-I, LTD.*, 670 A.2d 795, 800 (1995).

In contrast, the Michigan Court of Appeals held that the "dangers that inhere in the [sport of skiing]" include natural conditions and "types of equipment that are inherent parts of a ski area, such as lift towers." *Schmitz v. Cannonsburg Skiing Corp.*, 170 Mich.App. 692 (1988). If judges disagree on the meaning of the term "inherent risks," how can this court infer that a reasonable person would understand what rights he or she was signing away?

85

■

Given the well established principle that exculpatory contracts are construed strictly against the party seeking to rely on them, and given the ambiguous nature of the term "inherent risks of skiing," we must conclude that this waiver was void as against public policy because it failed to clearly, unambiguously, and unmistakably inform him Michael Yauger of the rights he was waiving. Although we recognize that *Dobratz* and *Arnold* resolved the issue on a contractual basis, *Richards* reached the same result, yet departed from the contractual analysis and rested on public policy. We conclude that public policy is the germane analysis. Just as the overbreadth of the overly broad releases in *Richards*, *Dobratz*, and *Arnold* raised questions about the plaintiff signers' understanding, so too the ambiguity in this form raises troubling questions about Michael Yauger's understanding of the waiver. A valid exculpatory contract must be clear, unambiguous, and unmistakable to the layperson. This form failed to unambiguously inform Michael Yauger that he was prospectively absolving Hidden Valley from responsibility for its negligence. The form absolved Hidden Valley from the inherent risks of skiing, but failed to state whether Hidden Valley's negligence was one of the inherent risks of skiing to which the clause referred.

■

The second principle that emerges from our prior cases that is relevant here is that the form, looked at in its entirety, must clearly and unequivocally communicate to the signer the nature and significance of the

document being signed. This form violates that principle in a number of respects.[1]

First, the form was a one page form entitled "APPLICATION." Thus, just as in Richards, this form was meant to serve two purposes: 1) an application for a season pass; and, 2) a release of liability. Just as in Richards, this dual function is not made clear in the title of the contract, which merely states, "APPLICATION." The written terms indicate very clearly that this contract is more than a mere application for a season pass. As we stated in *Richards*, "the release should have been conspicuously labeled as such to put the person signing the form on notice. . . Identifying and distinguishing clearly between those two contractual arrangements could have provided important protection against a signatory's inadvertent agreement to the release." *Richards*, 181 Wis. 2d at 1017.

Additionally, there was nothing conspicuous about the paragraph containing the waiver. It was one paragraph in a form containing five separate paragraphs. It did not stand out from the rest of the form in any manner. It did not require a separate signature.[2]

---

[1] We need not address the third ground articulated in Richards, i.e., standardized agreement which offers little or no opportunity for negotiation or free and voluntary bargaining, inasmuch as either of the above principles was sufficient to void this contract.

[2] The following suggestions for conspicuousness were adapted from guidelines for practitioners governing warranty disclaimers under the Uniform Commercial Code Stephanie J. Greer & Hurlie H. Collier, The Conspicuousness Requirement: Litigating and Drafting Contractual Indemnity Provisions in Texas After Dresser Industries, Inc. v. Page Petroleum, Inc., 35 S. Tex. L. Rev. 243, 265-70, Apr. 1994.

A clear, unambiguous, and unmistakable negligence waiver must be conspicuous. The far better practice is to place

The form, looked at in its entirety, must be such that a reviewing court can say with certainty that the signer was fully aware of the nature and the significance of the document being signed. The combination of the above factors leads us to conclude that we cannot say with any degree of certainty that a reasonable person would be aware of the nature and significance of the waiver at the time of its execution. Michael Yauger was aware of the nature and significance of the document he signed at the time he signed it.

While the law grudgingly accepts the proposition that people may contract away their liability right to recovery for negligently caused injuries, the document must clearly, unambiguously, and unmistakably express this intention. Furthermore, the document when looked at in its entirety must clearly and

the waiver in a separately titled section, highlighted from other parts of the contract. In order to further bring the signer's attention to the clause, it should be separately signed.

The print type and placement of the negligence waiver add to its clarity and conspicuousness. The waiver print should stand out from the surrounding print. Factors that militate in favor of conspicuousness as to print include using a larger print for the negligence waiver, using a different color print, preferably red, and italicizing or boldfacing the waiver.

The placement of the exculpatory clause also affects the signer's awareness. The negligence waiver should appear in an easy-to-find part of the document - not buried in the fine print. It should be on the front of a one-page contract, not on the reverse. If it is on the reverse, however, there should be language on the front calling the signer's attention to the negligence waiver on the reverse. If there are many pages in the contract, the disclaimer should be on the first page.

Finally, the language of the negligence waiver should be readable. The waiver should be preceded by a clear, not misleading, heading and should not be written in legal jargon.

unequivocally communicate the nature and significance of the waiver. This form before us fails in both respects. Accordingly, it is void as against public policy.[3] We remand to the circuit court for a trial on the issues of negligence and contributory negligence.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded to the circuit court for proceedings consistent with this opinion.

---

[3] Petitioner raises two other issues: (1) enforceability of the exculpatory clause against Michael Yauger's non-signing wife, Brenda Yauger, and (2) enforceability of the exculpatory clause with respect to claims arising under Wisconsin's Safe Place Statute. Because we find for the Petitioners on other grounds, we need not reach these issues.

# HIDDEN VALLEY SKI AREA

MANITOWOC, WISCONSIN

SKI AREA/SNOW REPORTS PHONE: 414-863-2713
MANITOWOC/OFFICE PHONE: 414-652-5475

### APPLICATION

I hereby apply for a 1992-1993 season membership pass/passes privilege at Hidden Valley Ski Area for the following named persons.
*INCLUDE RECENT FULL FACE 2" x 2" PHOTO FOR EACH PASS TO BE ISSUED WITH THE NAME OF PERSON ON THE BACK. (Do not submit polaroids which have been or need cutting.)

1. NAME: *MICHAEL YAUGER*   Age: *30*   Phone: *755-2355*
   ADDRESS: *307 CHURCH ST MISHICOT WI 54228*   Grade:
   (Full street number or Box number, city, state and Full zip code.)   *Print clearly

2. NAME: *BLONDA YAUGER*   Age: *30* Relationship: *WIFE*   Grade:

3. NAME: *TARA YAUGER*   Age: *10* Relationship: *DAUGHTER* Grade: *5*

4. NAME: *FELICIA YAUGER*   Age: *8* Relationship: *DAUGHTER* Grade: *3*

5. NAME: _____ Age: ___ Relationship: _____ Grade:

6. NAME: _____ Age: ___ Relationship: _____ Grade:

7. NAME: _____ Age: ___ Relationship: _____ Grade:

8. NAME: _____ Age: ___ Relationship: _____ Grade:

In support of this application for membership, I agree that:

1. There are certain inherent risks in skiing and that we agree to hold Hidden Valley Ski Area/Beiling Enterprises Inc. harmless on account of any injury incurred by me or my family member on the Hidden Valley Ski Area premises.

2. Hidden Valley Ski Area reserves the right to make reasonable rules for the safety and convenience of its patrons and for proper utilization of its facilities. We agree to obey these rules which include the Skiers Responsibility Code and the ski Area safety rules and rules under the State of Wisconsin codes which Hidden Valley must enforce. Violations of these rules is a misdemeanor. Rules are posted in the lodge and on the slopes. All signs per State regulations are posted on lifts and ski slopes.

3. Re-selling, exchanging or lending of either lift tickets or season pass will result in loss of skiing privileges under this membership. Passes cannot be refunded.

4. If I do not have my pass with me when I arrive at Hidden Valley, I will have to pay for the purchase of a ticket at the ticket window. Replacement of a lost pass $20. will be charged upon request of replacement by phone or mail to Hidden Valley office.

5. Any misconduct or violation of ski area rules and regulations will result in loss of of membership pass without refund. Ski Areas management will make decisions as to violations or misconduct. Ski Patrole will enforce ski slopes violations.

_____   Date: *10/8/92*
* Signature of Member/Adult Responsible. (If under 18 parent or guardian must sign.)

Enclosed is my check # *5143* Amount $ *719.35* for the above requested Season Passes.

*no photos*   *685 + 34.35 tx*