Jessica L. METTLER by her Guardian ad Litem, George Burnett and Perry and Mary Mettler, Plaintiffs-Appellants-Cross-Respondents,

v.

Debra L. NELLIS and General Star Indemnity Company, Defendants-Respondents-Cross-Appellants.†

Court of Appeals

*No. 04–1216. Submitted on briefs January 24, 2005.—Decided March 22, 2005.*

2005 WI App 73

(Also reported in 695 N.W.2d 861.)

† Petition to review denied 6-1-2005.

754

On behalf of the plaintiffs-appellants-cross-respondents, the cause was submitted on the briefs of *George Burnett* of *Liebmann, Conway, Olejniczak & Jerry, S.C.*, Green Bay.

On behalf of the defendants-respondents-cross-appellants, the cause was submitted on the briefs of *W. Patrick Sullivan* and *Corrado Cirillo* of *Siesennop & Sullivan*, Milwaukee.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J.   Jessica, Perry and Mary Mettler appeal a summary judgment dismissing their claims against Debra Nellis and her insurer, General Star Indemnity Company.[1] The Mettlers argue the circuit court erred by failing to consider their expert's affidavit, which created a genuine issue of material fact as to whether the equine immunity statute, WIS. STAT. § 895.481, applies.[2] We agree and reverse that portion of the judgment. Nellis cross-appeals, arguing the Mettlers' claims are barred by the releases Mary and Jessica signed. We conclude the releases violate public policy and thus are void. Therefore, we affirm that portion of the judgment. We remand to the circuit court for further proceedings.

## BACKGROUND

¶ 2.   This case arises from an accident on August 20, 2001, when Jessica Mettler fell off a horse while taking a riding lesson from Nellis. At the time, Jessica was fifteen years old. She had no horseback riding training aside from three prior lessons with Nellis.[3]

---

[1] We will refer to Debra Nellis and General Star collectively as "Nellis."

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[3] Nellis testified at her deposition that Jessica took a total of four lessons; Jessica testified to taking five lessons.

¶ 3. When Jessica's mother, Mary, took Jessica to her first lesson, they were given six pages of documents to be signed before Jessica's lesson could begin. The documents included three releases, a medical authorization, a list of service prices, and cancellation and payment policies. Jessica and Mary filled out and signed the documents, and Jessica turned them in at the stable's office so she could begin her lesson.

¶ 4. On the day of the accident, Jessica was cantering her horse when the horse ran close to the side of the corral. Jessica's leg hit a post, she lost her balance and fell out of the saddle. Her right foot caught in the stirrup and she was dragged on the ground for a distance before her foot dislodged, resulting in injuries.

¶ 5. On April 16, 2003, the Mettlers commenced this suit, contending that Nellis's negligence caused Jessica's injuries. On December 15, 2003, Nellis moved for summary judgment, arguing that the releases barred the Mettlers' claims and that the equine immunity statute applied. The Mettlers argued that the releases were void as against public policy and an exception to the equine immunity statute applied. In support of their argument on equine immunity, they submitted an affidavit of Kathy O'Connor, an experienced equestrian teacher, who concluded that Nellis's teaching techniques were unreasonable under the circumstances.

¶ 6. The circuit court found the releases void as against public policy, and thus concluded summary judgment could not be based on the releases. However, the court refused to consider O'Connor's affidavit because it was conclusory and, therefore, granted summary judgment on equine immunity grounds.

## STANDARD OF REVIEW

¶ 7.  We review a summary judgment indepen-
dently, using the same methodology as the circuit court.
*Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315,
401 N.W.2d 816 (1987). We view the facts in the light
most favorable to the nonmoving party. *State Bank of
La Crosse v. Elsen*, 128 Wis. 2d 508, 511–12, 383 N.W.2d
916 (Ct. App. 1986). Summary judgment is appropriate
when no material facts are in dispute and the moving
party is entitled to judgment as a matter of law. WIS.
STAT. § 802.08.

## DISCUSSION

### *The Mettlers' Appeal*

¶ 8.  The Mettlers argue the circuit court erred
when it granted summary judgment to Nellis based on
equine immunity. WISCONSIN STAT. § 895.481 provides
immunity to persons participating in equine activities
for injuries caused as a result of the activities' inherent
risks. However, there are exceptions to the immunity.
*See* WIS. STAT. § 895.481(3). One exception is when the
person seeking immunity "[p]rovides an equine to a
person and fails to make a reasonable effort to deter-
mine the ability of the person to engage safely in an
equine activity or to safely manage the particular
equine provided based on the person's representations
of his or her ability." WIS. STAT. § 895.481(3)(b).

¶ 9.  Whether Nellis is entitled to immunity turns
on whether the exception to equine immunity applies:
did Nellis safely manage the horse on the day of the
accident in light of Jessica's ability and experience? The

Mettlers contend that Nellis did not safely manage the horse and, thus, is not entitled to immunity. They submitted an affidavit by their expert witness, Kathy O'Connor, along with an affidavit by their attorney attaching portions of the three depositions taken in the case. O'Connor's affidavit states that she is a member of the Madison Hoofer Riding Club and has been giving riding lessons for thirteen years; that she has reviewed the depositions of Nellis, Mary and Jessica; and that, based on her review, Jessica was "too inexperienced to be engaged in the activity of cantering under the conditions in the arena" and Nellis "failed to safely manage the riding situation based upon [Jessica]'s ability and experience level." The Mettlers argue O'Connor's affidavit creates a genuine issue of material fact regarding the applicability of equine immunity, so that summary judgment is inappropriate.

¶ 10. Nellis counters that O'Connor's affidavit cannot be considered because it contains only opinions and no specific facts. Nellis relies on WIS. STAT. § 802.08(3), which provides that opposing affidavits "must set forth specific facts showing that there is a genuine issue for trial." However, we note that the statute begins by explaining that the affidavits must contain "such evidentiary facts as would be admissible in evidence." WIS. STAT. § 802.08(3). "Evidentiary facts" are facts admissible in evidence at trial. *Leszczynski v. Surges*, 30 Wis. 2d 534, 538–39, 141 N.W.2d 261 (1966).

¶ 11. O'Connor's affidavit contains opinions, but opinion testimony by an expert witness is admissible at trial as long as the expert is qualified and has adequate

foundation for the opinion. *See* Wis. Stat. § 907.02.[4] Therefore, at summary judgment, an "affidavit setting forth the expert's opinion is evidence of a factual dispute" as long as "the opinion is expressed on a matter that is appropriate for expert opinion and the affiant is arguably an expert . . . ."[5] *Hansen v. New Holland N. Am., Inc.*, 215 Wis. 2d 655, 671, 574 N.W.2d 250 (Ct. App. 1997). We conclude that O'Connor's affidavit is sufficient to qualify her to give her opinions. Her affidavit sets forth her qualifications:   she is a member of the Madison Hoofer Riding Club and has given riding lessons for thirteen years.[6] The affidavit also articulates the foundation for her opinion:   her opinion is based

---

[4] Nellis argues that Wis. Stat. ch. 907, which governs the admissibility of expert testimony at trial, is irrelevant because this case is before us on summary judgment. However, the restrictions on summary judgment affidavits contained in Wis. Stat. § 802.08 "are to remove from a court's consideration on summary judgment purported 'facts' that would not be admissible at trial." *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2001 WI App 148, ¶ 54 n.19, 246 Wis. 2d 933, 632 N.W.2d 59 (citation omitted), *aff'd*, 2002 WI 80, 254 Wis. 2d 77, 646 N.W.2d 777. Accordingly, whether O'Connor's opinions are admissible at trial is relevant to whether her affidavit containing those opinions should be considered at summary judgment.

[5] Nellis does not argue that expert opinion is inappropriate, only that O'Connor's affidavit is insufficient.

[6] Nellis argues that O'Connor's affidavit does not establish her qualifications, since it does not attach a resume and does not state that "the Madison Hoofer Riding Club has anything to do with horseback riding" or that the riding lessons she has given are "equine related." However, we draw all reasonable inferences in the Mettlers' favor, as the nonmoving party, *see Strozinsky v. School Dist. of Brown Deer*, 2000 WI 97, ¶ 7 n.3, 237 Wis. 2d 19, 614 N.W.2d 443, and thus conclude that O'Connor's experience relating to horseback riding sufficiently qualifies her to render opinions on equine activities.

on her review of the depositions. Her opinion aids the trier of fact in determining whether Nellis safely managed the equine activity in light of Jessica's experience. *See* Wis. Stat. §§ 907.02, 895.481(3)(b). This would be sufficient for O'Connor's opinions to be admissible at trial. Therefore, her affidavit setting forth those opinions raises a genuine factual issue for trial.

### Nellis's Cross-Appeal

¶ 12. Nellis argues the circuit court erred by concluding the releases signed by Jessica and Mary were void as against public policy. Nellis contends the releases are enforceable and bar the Mettlers' claims.

¶ 13. Exculpatory clauses, such as those contained in the releases, are not favored in Wisconsin. *Atkins v. Swimwest Family Fitness Ctr.*, 2005 WI 4, ¶ 12, 277 Wis. 2d 303, 691 N.W.2d 334. That is because they often "allow conduct below an acceptable standard of care." *Yauger v. Skiing Enters., Inc.*, 206 Wis. 2d 76, 81, 557 N.W.2d 60 (1996). While not invalid per se, exculpatory clauses are closely scrutinized by courts and are strictly construed against the party that seeks to rely on them. *Atkins*, 691 N.W.2d 334, ¶ 12. Exculpatory clauses are void if they violate public policy. *Yauger*, 206 Wis. 2d at 80.

¶ 14. Courts look at a variety of factors, which were recently summarized in *Atkins*, to determine whether an exculpatory clause violates public policy. In *Yauger*, the court concluded "the waiver must clearly, unambiguously, and unmistakably inform the signer of what is being waived" and "the form, looked at in its entirety, must alert the signer to the nature and significance of what is being signed." *Yauger*, 206 Wis. 2d at

The *Richards* court concluded a release was unenforceable because it (1) served two purposes and neither purpose was clearly identified or distinguished; (2) was broad and all-inclusive; and (3) was a standard, preprinted form signed with little or no opportunity to negotiate or bargain. *Richards v. Richards*, 181 Wis. 2d 1007, 1011, 513 N.W.2d 118 (1994).

¶ 15.   Nellis argues the releases were not overly broad because they were limited to injury arising from participation in horse-related activities.[7] Our review of the releases shows no such limitation. All three releases provide that the signer assumes the unavoidable risks inherent in horse-related activities. However, the documents purport to release "any liability or responsibility for any accident damage, injury, or illness," not merely injuries from horse-related activities. The release is broad enough to include intentional behavior. *See Richards*, 181 Wis. 2d at 1017. "[A]n exculpatory contract contravenes public policy when it would absolve the tortfeasor from any injury to the victim for any reason." *Id.* at 1018.

¶ 16.   The releases are broad not only in the scope of behavior covered but in the number and category of individuals and entities released. *See id.* at 1017–1018. The first document releases Nellis; New Heights Hunters & Jumpers; Thornberry Stables; the stable owners; their employees; all horse owners, including those of twenty named horses; as well as the families of the horse owners. The first two documents purport to release the claims of the signer, the signer's family members and anyone accompanying the signer. The third document releases Thornberry Stables, LLC, from

---

[7] Nellis does not rely on any one release, addressing her arguments to the three releases collectively.

liability, an entity that was not formed until months after the release was signed and the accident occurred. Consequently, the releases are too broad and all-inclusive to be enforceable.

¶ 17.  Nellis further argues that the Mettlers were apprised of what they were signing and waiving, as well as the significance and nature of what the releases contained. *See Yauger*, 206 Wis. 2d at 84. They point to specific protions of the releases:  the headings that indicate the documents are release and hold harmless agreements, the statutory notice language regarding equine immunity and the statement on two of the releases to keep a copy of the document.

■■

¶ 18.  However, "[a] valid exculpatory contract must be clear, unambiguous, and unmistakable to the layperson." *Id.* at 86. The portions of the releases relied on by Nellis do not defeat the otherwise confusing and ambiguous nature of the documents. The releases include an assumption of the "unavoidable risks inherent in all horse-related activities," but that language is buried in fine print and the releases do not define what those risks are. *See id.* (contract assuming the "inherent risks" of skiing is ambiguous and violates public policy). Nellis claims that other language in the releases, stating that "the inherent risks of equine activities" are defined in Wis. Stat. § 895.481(1)(e), adequately explains what risks are being assumed. However, we strictly construe any ambiguity against Nellis, *see Atkins*, 691 N.W.2d 334, ¶ 12, and we cannot conclude that such a meaning would be unmistakable to a layperson.[8] *See Yauger*, 206 Wis. 2d at 86.

---

[8] In an argument that is difficult to follow, Nellis appears to suggest that the releases are supported by public policy regard-

¶ 19. Because the releases are broad and all-inclusive, do not clearly inform the signer of what was being waived and do not, when viewed in their entirety, alert the Mettlers to the significance of what they were signing, the releases are void as against public policy.[9]

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.

ing equine immunity, as articulated by the legislature in WIS. STAT. § 895.481. She argues the releases adopt, rather than supplant, the definitions and exceptions of the equine immunity statute. In her reply brief, she argues "negligent behavior is **avoidable**. The releases specifically address the **unavoidable** risk inherent in all equine activities." However, the Mettlers are making a negligence claim and are relying on an exception to the equine immunity statute. If the releases do no more than adopt the statute, a factual dispute remains, as previously discussed in this opinion.

[9] The Mettlers raise a number of additional arguments for invalidating the releases, including the lack of free bargaining, Nellis's failure to post a statutorily required warning sign by the corral, Jessica's minority and legal inability to be bound to a contract, and the inability of a parent to waive a child's claim. We find the factors discussed in the body of the opinion conclusive and decline to address these additional arguments. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issue need be addressed).