Ronald J. BROOTEN,
Plaintiff-Appellant-Respondent,

v.

HICKOK REHABILITATION SERVICES, LLC
d/b/a Chetek Therapy & Fitness,
Chetek Therapy & Fitness, LLC and
Chetek Fitness 24/7 and
West Bend Mutual Insurance Company,
Defendants-Respondents,

HOIST FITNESS SYSTEMS, INC.,
Wausau Insurance Company,
The Pyramid Life Insurance Company
and United States Centers for
Medicare & Medicaid Services,
Defendants,

2ND WIND EXERCISE EQUIPMENT,
Defendant-Co-Appellant.

Court of Appeals

No. 2012AP1940. Submitted on briefs March 19, 2013.
—Decided April 30, 2013.

2013 WI App 71

(Also reported in 831 N.W.2d 445.)

On behalf of the plaintiff-appellant-respondent, the cause was submitted on the briefs of *Tracy N. Tool of Bye, Goff & Rohde, Ltd.*, River Falls.

On behalf of the defendant-co-appellant, the cause was submitted on the briefs of *Jeffrey A. Muszynski* and *Andrew R. Brown* of *Reding & Pilney, PLLP*, Lake Elmo, MN.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Patrick G. Heaney* of *Thrasher, Pelish, Franti & Heaney, Ltd.*, Rice Lake.

Before Hoover, P.J., Mangerson, J., and Thomas Cane, Reserve Judge.

¶ 1. HOOVER, P.J. Ronald Brooten appeals a summary judgment dismissing his personal injury claims against Chetek Fitness 24/7 and its insurer, West Bend Mutual Insurance Company (collectively, "Chetek

Fitness").[1] Brooten argues the circuit court erroneously enforced an exculpatory waiver Brooten signed when joining the health club. We hold that the waiver was unenforceable, and reverse and remand.[2]

## BACKGROUND

¶ 2. Brooten was injured at Chetek Fitness when a weight bench he was using failed. Chetek Fitness had purchased the weight bench new from 2nd Wind Exercise Equipment, and it was manufactured by Hoist Fitness Systems, Inc. The bench could be used in decline, flat, or incline positions, and was held in position by an adjustable T-bar. Brooten was using the bench to bench press when the portion of the bench under his back collapsed from a flat position to a decline position. The bench collapsed because the T-bar was loose and shifted laterally.

¶ 3. According to Hoist's product support manager, Mario Lopez, if the bench's T-bar is properly installed and the supporting bolts tightened, the bar would not move from side to side. Lopez opined that the bolts securing the T-bar on the bench "were not sufficiently tightened, and . . . the product was not correctly assembled or maintained on the day of the accident." The bench was not manufactured with any locking mechanism to secure the T-bar in position.

---

[1] Our references to Chetek Fitness are inclusive of the various LLC's and d/b/a designations identified in the caption.

[2] 2nd Wind Exercise Equipment also appeals. However, our reversal of the summary judgment decision renders 2nd Wind's appeal moot. Because we hold the waiver is unenforceable against Brooten, the waiver cannot foreclose 2nd Wind's contribution claim against Chetek Fitness.

¶ 4. Chetek Fitness requires every customer to sign a waiver form before they are permitted to use the facility. It reads:

### *Waiver and Release of Liability*

**In agreeing to participate in fitness activities at Chetek Fitness 24/7, I agree as follows:**

I fully understand and acknowledge that recreational and fitness activities have (a) inherent risks, dangers, and hazards and such exists in my use of any equipment and my participation in these activities; (b) my participation in such activities and/or use of such equipment may result in injury or illness including, but not limited to bodily injury, disease, strains, fractures, partial and/or total paralysis, death or other ailments that, could cause serious disability; (c) these risks and dangers may be caused by the negligence of the representatives, employees, or volunteers of Chetek Fitness 24/7, the negligence of the participants, the negligence of others, accidents, breaches of contract, or other causes; (d) by my participation in these activities and for use of equipment, I hereby assume all risks and dangers and all responsibility for any losses and/or damages whether caused in whole or in part by the negligence or the conduct of the representatives, employees, or volunteers of Chetek Fitness 24/7, or by any other person.

In agreeing to participate in fitness related activities at Chetek Fitness 24/7, I acknowledge that certain injuries are possible. These include but are not limited to: Minor or major bone fracture, scrapes, abrasions, lacerations, head or body bumps, bruises, muscle, tendon, or ligament strains or sprains. These might be caused by: Slips, falls, and other gravity-related mishaps, equipment failure, overstraining, or exceeding physical limitations, human error, disregard for guidelines, rules, and standard practice, ignorance or inattention.

I, on behalf of myself, my personal representatives and my heirs, hereby voluntarily agree to release, waive, discharge, hold harmless, defend, and indemnify Chetek Fitness 24/7 and its representatives, employees, and volunteers from any and all claims, actions or losses for bodily injury, property damage, wrongful death, loss of services or otherwise which may arise out of my use of any equipment or participation in these activities. I specifically understand that I am releasing, discharging, and waiving any claims or actions that I may have presently or in the future for the negligent acts or other conduct by the representatives, employees, and volunteers of Chetek Fitness 24/7.

I HAVE READ THE ABOVE WAIVER AND RELEASE AND BY SIGNING IT AGREE IT IS MY INTENTION TO EXEMPT AND RELIEVE CHETEK FITNESS 24/7 FROM LIABILITY FOR PERSONAL INJURY, PROPERTY DAMAGE OR WRONGFUL DEATH CAUSED BY NEGLIGENCE OR ANY OTHER CAUSE.

Following the above language were five blank lines for, respectively, the participant's name, address, phone number, and signature, and the date.

¶ 5. Brooten brought common law negligence, safe place, and strict liability claims against Chetek Fitness.[3] The circuit court granted summary judgment in favor of Chetek Fitness, determining the waiver was enforceable and barred Brooten's claims. However, the court further held, "if the decision on waiver was incorrect, there is sufficient dispute of the material facts to allow the case to proceed on a safe place theory." Brooten now appeals.[4]

---

[3] Brooten also sued 2nd Wind and Hoist.

[4] Brooten indicates he has abandoned his strict liability claim.

## DISCUSSION

■

¶ 6. Whether the circuit court properly granted summary judgment is a question of law reviewed de novo. *Atkins v. Swimwest Family Fitness Ctr.*, 2005 WI 4, ¶ 11, 277 Wis. 2d 303, 691 N.W.2d 334. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing WIS. STAT. § 802.08).[5]

■

¶ 7. This case turns on the interpretation of Chetek Fitness's waiver form, and whether it relieves Chetek Fitness of liability for injury caused by its negligence. *See id.*, ¶ 12. "Wisconsin case law does not favor such agreements." *Id.* In 2005, our supreme court observed, "Indeed, each exculpatory contract that this court has looked at in the past 25 years has been held unenforceable." *Rainbow Country Rentals & Retail, Inc. v. Ameritech Publ'g, Inc.*, 2005 WI 153, ¶ 35, 286 Wis. 2d 170, 706 N.W.2d 95. "Such clauses have been, are, and will continue to be looked upon with disfavor." *Id.*, ¶ 47 (Bradley, J., dissenting) (agreeing with the majority). While an exculpatory clause is not invalid per se, such a provision must be closely scrutinized and construed strictly against the party seeking to rely on it. *Atkins*, 277 Wis. 2d 303, ¶ 12; *Mettler v. Nellis*, 2005 WI App 73, ¶ 13, 280 Wis. 2d 753, 695 N.W.2d 861.

■

¶ 8. Generally, exculpatory clauses have been analyzed on principles of contract law and on public policy grounds. *Atkins*, 277 Wis. 2d 303, ¶ 13. For the contractual inquiry, we examine the agreement to determine if

---

[5] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

it was broad enough to cover the activity at issue. *Id.* However, the contractual analysis has been de-emphasized in the case law, with contractual factors being considered instead on public policy grounds. *Id.* Public policy is "the 'germane analysis' for exculpatory clauses." *Id.*

■

¶ 9. We conclude Chetek Fitness's liability waiver is contrary to public policy and, therefore, void and unenforceable. First, the waiver was presented on a take-it-or-leave-it basis. "The form itself must provide an opportunity to bargain." *Id.*, ¶ 25 (citing *Richards v. Richards*, 181 Wis. 2d 1007, 1019, 513 N.W.2d 118 (1994)). The absence of an opportunity to bargain in regard to an exculpatory clause's terms is a "significant factor" suggesting a violation of public policy. *Id.*, ¶ 26.

¶ 10. Second, Chetek Fitness's waiver is impermissibly broad and all-inclusive. It is well-settled that an exculpatory clause may only release claims of negligence; it cannot, under any circumstances—bargained or not—preclude claims based on reckless or intentional conduct. *See id.*, ¶¶ 13 n.5, 19 (citing RESTATEMENT (SECOND) OF CONTRACTS § 195(1) (1981) ("A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy."); *Rainbow Country*, 286 Wis. 2d 170, ¶¶ 35–36; *Mettler*, 280 Wis. 2d 753, ¶ 15; *Werdehoff v. General Star Indem. Co.*, 229 Wis. 2d 489, 507, 600 N.W.2d 214 (Ct. App. 1999) ("The law in Wisconsin is clear: '[A]n exculpatory contract exempting a party from tort liability for harm caused intentionally or recklessly is void as against public policy.' ") (quoting *Kellar v. Lloyd*, 180 Wis. 2d 162, 183, 509 N.W.2d 87 (Ct. App. 1993)); *Richards*, 181 Wis. 2d at 1015, 1017–19.

¶ 11. The scope of Chetek Fitness's waiver is as broad or broader than the waivers that have been rejected by previous Wisconsin courts on such a basis. The waiver's scope extends well beyond negligence claims. For example, the waiver states that "[inherent] risks and dangers may be caused by . . . negligence[,] accidents, breaches of contract, or other causes." Participants assumed all risks "whether caused in whole or in part by the negligence or the conduct of . . . Chetek Fitness 24/7" and waived "any and all claims" including "any claims . . . for the negligent acts or other conduct of . . . Chetek Fitness 24/7." Finally, the form required participants to waive "LIABILITY FOR PERSONAL INJURY, PROPERTY DAMAGE OR WRONGFUL DEATH CAUSED BY NEGLIGENCE OR ANY OTHER CAUSE."

¶ 12. Moreover, despite the release already being overly broad by extending beyond negligence claims, Chetek Fitness saw fit to take it two steps further. The waiver further requires Brooten to both "defend[] and indemnify Chetek Fitness 24/7 and its representatives, employees, and volunteers from any and all claims . . . which may arise out of [his] use of any equipment or participation in [recreational and fitness] activities."

██

¶ 13. Chetek Fitness argues the waiver is enforceable because it repeatedly uses the terms negligence or negligent, which it suggests are magic words rendering an exculpatory clause valid. Further, Chetek Fitness asserts its waiver "does not use overly broad and all-inclusive language." That assertion ignores, and is belied by, the facts. When the waiver refers to "NEGLIGENCE OR ANY OTHER CAUSE," it clearly encompasses conduct beyond negligence. In fact, the waiver purports to preclude liability for any harm for any cause

under the sun. "An exculpatory agreement will be held to contravene public policy if it is so broad 'that it would absolve [the defendant] from any injury to the [plaintiff] for any reason.' " *Richards*, 181 Wis. 2d at 1015 (quoting *College Mobile Home Park & Sales v. Hoffmann*, 72 Wis. 2d 514, 521–22, 241 N.W.2d 174 (1976)).

¶ 14. Finally, in addition to the waiver lacking bargaining opportunity and being overly broad in scope, we conclude it is unenforceable because it exceeds the contemplation of the parties. "First, the waiver must clearly, unambiguously, and unmistakably inform the signer of what is being waived. Second, the form, looked at in its entirety, must alert the signer to the nature and significance of what is being signed." *Yauger v. Skiing Enters., Inc.*, 206 Wis. 2d 76, 84, 557 N.W.2d 60 (1996).

¶ 15. Both the form's title and its final, capitalized paragraph describe a waiver and release of liability. We are satisfied that an ordinary consumer would not contemplate that "defend and indemnify" language buried in the middle of the form's text would require him or her to provide a legal defense for Chetek Fitness and to pay Chetek Fitness's share of damages in the event a third party sued Chetek Fitness. Furthermore, to the extent the waiver focuses on the term "negligence," this serves to diminish the clarity of the waiver's scope. By referring to other conduct or causes, but then specifically and repeatedly identifying only negligence—to the exclusion of reckless or intentional conduct—the waiver may mislead a potential customer into believing he or she was not waiving claims related to battery or other reprehensible conduct. Chetek Fitness's waiver therefore fails to withstand close scrutiny. *See Mettler*, 280 Wis. 2d 753, ¶ 13.

¶ 16. WISCONSIN STAT. RULE 809.25(1) costs are allowed to Brooten, but not to 2nd Wind.

*By the Court.*—Judgment reversed and cause remanded.