Dawn KANGAS and Paul Kangas, Plaintiffs-Appellants-Cross-Respondents,†

v.

Virgil PERRY and Auto Owners Insurance Company, Defendants-Respondents,

Sandy GILBERT, Defendant-Respondent-Cross-Appellant.

Court of Appeals

*No. 00–0001. Submitted on briefs August 7, 2000.—Decided October 3, 2000.*

2000 WI App 234

(Also reported in 620 N.W.2d 429.)

†Petition to review denied.

On behalf of the plaintiffs-appellants-cross-respondents, the cause was submitted on the briefs of *James Koby* of *Park O'Flaherty, Ltd.* of La Crosse.

On behalf of the defendants-respondents, the cause was submitted on the brief of *David E. Richie* of *Danielson, Guettinger, Richie & Manydeeds, S.C.* of Eau Claire.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the brief of *Lorrie J. Franson* of Eau Claire.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Dawn and Paul Kangas appeal from a summary judgment dismissing their claim for personal injuries Dawn suffered after falling from a horse-drawn sled on Sandy Gilbert's property. The Kangases argue that the trial court erred by (1) applying the equine immunity statute, WIS. STAT. § 895.481,[1] to the facts of this case; and (2) failing to conclude that Gilbert was vicariously liable as part of a joint venture with Virgil Perry, the horses' owner. We conclude that Perry is immune from liability under the equine immunity statute. We further conclude that because all four elements of a joint venture were not established, no joint venture between Gilbert and Perry existed.

¶ 2. Gilbert cross-appeals, challenging the circuit court's refusal to sanction the Kangases for pursuing a frivolous claim. Gilbert additionally moves this court to sanction the Kangases for a frivolous appeal. We conclude that neither the Kangases' claim nor appeal is frivolous as contemplated under WIS. STAT. §§ 814.025 or 809.25(3), respectively. Accordingly, we affirm the judgment.

## BACKGROUND

¶ 3. In August 1996, Perry and Gilbert resided together on Gilbert's property. Perry owned and trained Belgian horses that he entered in local horse-pulling competitions. As part of their training, the horses would pull a sled that Perry had constructed. On August 19, Perry contacted Tom Moldenhauer, Dawn's brother, to ask for assistance with a horse he believed to be sick. Dawn, who was at Moldenhauer's house at the time, accompanied her brother to Gilbert's prop-

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

erty. After some discussion, Dawn and Moldenhauer agreed to accompany Perry on the sled as he exercised two draft horses. Perry and Moldenhauer sat on an old bus seat installed at the front of the sled and Dawn stood behind them.

¶ 4. The three eventually stopped to give the horses a rest, during which time Dawn let go of the back of the seat and opened a beer can. Shortly thereafter, the horses started pulling forward. Dawn lost her balance and fell off the sled, thereby sustaining serious injury. The Kangases subsequently filed suit against both Gilbert and Perry alleging negligence in the design and maintenance of the sled. Both Gilbert and Perry moved for summary judgment, claiming they were not liable for Dawn's injuries under the equine immunity statute, WIS. STAT. § 895.481 and the recreational immunity statute, WIS. STAT. § 895.52. Gilbert additionally sought sanctions for frivolous claim pursuant to WIS. STAT. § 814.025. In response to the defendants' respective motions for summary judgment, the Kangases, for the first time, alleged the existence of a joint venture between Gilbert and Perry in order to impose vicarious liability on Gilbert.

¶ 5. After a hearing on the motions, the circuit court concluded that the equine immunity statute applied and further found that the equipment was not faulty, thus barring liability under any exception to the statute. The court additionally refused to find the Kangases' claim frivolous. This appeal and cross-appeal followed.

## ANALYSIS

¶ 6. Whether summary judgment was appropriately granted presents a question of law that we review

independently of the circuit court. *See Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 651–52, 476 N.W.2d 593 (Ct. App. 1991). When reviewing summary judgments, we utilize the same analysis as the circuit court and must apply the standards set forth in WIS. STAT. § 802.08(2). *See Schultz v. Industrial Coils, Inc.*, 125 Wis. 2d 520, 521, 373 N.W.2d 74 (Ct. App. 1985). In general, "summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Kenefick v. Hitchcock*, 187 Wis. 2d 218, 224, 522 N.W.2d 261 (Ct. App. 1994).

A. THE EQUINE IMMUNITY STATUTE

¶ 7. The Kangases argue that the equine immunity statute, WIS. STAT. § 895.481, is inapplicable to the facts of this case. Alternatively, they contend that even if applicable, Perry is nevertheless liable under one of the exceptions to the statute. We disagree.

¶ 8. The application of a statute to a particular set of facts presents a question of law that this court reviews de novo. *See Bucyrus-Erie Co. v. DILHR*, 90 Wis. 2d 408, 417, 280 N.W.2d 142 (1979). The goal of statutory interpretation is to determine and give effect to the legislature's intent. *See Doe v. American Nat'l Red Cross*, 176 Wis. 2d 610, 616, 500 N.W.2d 264 (1993). We must first look to the statute's plain language. If the language is clear and unambiguous on its face, we merely apply that language to the facts at hand. *See In re Peter B.*, 184 Wis. 2d 57, 71, 516 N.W.2d 746 (Ct. App. 1994). Although we do not look beyond the statute's plain meaning, we will consider its parts in relationship to the whole statute and to related sec-

tions. *See Elliott v. Employers Mut. Cas. Co.*, 176 Wis. 2d 410, 414, 500 N.W.2d 397 (Ct. App. 1993).

¶ 9. When a statute's language is ambiguous, we may then consider legislative intent and collateral sources, including "the scope, history, context, subject matter and object of the statute." *Armor All Prods. v. Amoco Oil Co.*, 194 Wis. 2d 35, 50, 533 N.W.2d 720 (1995). "Statutory language is ambiguous if reasonably well-informed individuals could differ as to its meaning." *State v. Kirch*, 222 Wis. 2d 598, 602–03, 587 N.W.2d 919 (Ct. App. 1998).

¶ 10. Turning to the language of the statute, WIS. STAT. § 895.481(2) provides:

> Except as provided in subs. (3) and (6), a person, including an equine activity sponsor or an equine professional, is immune from civil liability for acts or omissions related to his or her participation in equine activities if a person participating in the equine activity is injured or killed as the result of an inherent risk of equine activities.

"Inherent risk of equine activities," is defined as

> a danger or condition that is an integral part of equine activities, including all of the following:
>
> 1. The propensity of an equine to behave in a way that may result in injury or death to a person on or near it.
>
> 2. The unpredictability of an equine's reaction to a sound, movement or unfamiliar object, person or animal.
>
> 3. A collision with an object or another animal.

 4. The potential for a person participating in an equine activity to act in a negligent manner, to fail to control the equine or to not act within his or her ability.

 5. Natural hazards, including surface and sub-surface conditions.

WIS. STAT. § 895.481(1)(e).

¶ 11. The Kangases, citing foreign jurisdictions, argue that the equine immunity statute is not applicable to all persons, but rather, only to equine professionals. We are not persuaded. The plain language of the statute allows immunity to any person, "*including* an equine activity sponsor or equine professional." WIS. STAT. § 895.481(2) (emphasis added). Had the legislature intended to limit immunity to equine professionals only, it could have done so.

¶ 12. Because the statute is clear and unambiguous on its face, we need only apply it to the facts at hand. Here, Dawn fell and was injured after losing her balance when Perry's horses unexpectedly moved forward. The horses' propensity to move without warning is an inherent risk of equine activity contemplated by the statute. The equine immunity statute is thus applicable to these facts.

¶ 13. The Kangases contend that Perry is nevertheless liable under one of the exceptions to the equine immunity statute. WISCONSIN STAT. § 895.481(3) provides, in relevant part: "The immunity under sub. (2) does not apply if the person seeking immunity does any of the following: (a) Provides equipment or tack that he or she knew or should have known was faulty and the faulty equipment or tack causes the injury or death . . . . " The Kangases argue that a material issue of fact exists as to whether Perry's sled was faulty and

whether he knew of its faulty condition. However, whether the sled was faulty and whether Perry knew of its faulty condition is immaterial because the Kangases failed to show that the sled, even if faulty, caused Dawn's injuries. It is undisputed that Dawn was not holding on to the back of the driver's seat and consequently lost her balance after the horses unexpectedly lurched forward. Although the Kangases claim that the sled was faulty, they never specify how the alleged faulty condition of the sled caused her fall. Therefore, they fail to raise any disputed issue of material fact with respect to Perry's immunity from liability under § 895.481.

B. JOINT VENTURE

¶ 14. Though they do not now contend that Gilbert knew of the allegedly faulty condition of the sled, the Kangases nevertheless argue that Gilbert is vicariously liable as part of a joint venture with Perry. To establish the existence of a joint venture, the following four elements must be present: "(1) contribution of money or services by each of the parties; (2) joint proprietorship and mutual control over the subject matter of the venture; (3) an agreement to share profits; and (4) an express or implied contract establishing the relationship." *Ruppa v. American States Ins. Co.*, 91 Wis. 2d 628, 645, 284 N.W.2d 318 (1979).

¶ 15. The facts presented do not establish that Perry and Gilbert were engaged in a joint venture. Perry and Gilbert agreed that in exchange for rent-free housing and board for his horses, Perry would be responsible for lawn care and snow removal on the property, in addition to caring for both his and Gilbert's horses, buying their feed, watering them and keeping

401

their stalls clean. Although a sign on Gilbert's property read "Gilbert and Perry Pulling," both claimed that it was predominantly Perry who was involved in local horse-pull competitions.

¶ 16. At her deposition, Gilbert was asked to describe the extent of her horse-pulling activities prior to the date of Dawn's injuries. Gilbert stated that she attended horse-pull competitions and on two occasions, drove the team. Additionally, she had helped Perry prepare the team for competitions. Gilbert stated, however, that although she may have participated in their use, she was neither responsible nor accountable for their training. With regard to the competitions, Perry would pay the entry fees and reap the benefits of any cash awards.

¶ 17. Although it is undisputed that Gilbert did not directly share in the profits of any horse-pull competition awards, the Kangases nevertheless argue that Gilbert indirectly benefited from these awards, as Perry cared for both his and her horses. We need not decide, however, whether indirect benefit from the joint venture is sufficient to satisfy the element requiring that the members of a joint venture share in the venture's profits. It was Perry who owned the horses, executed their training regimen and paid the entry fees for the various competitions. Thus Gilbert did not enjoy joint proprietorship and mutual control over the subject matter of the venture. Because all four elements of a joint venture were not established, we conclude that no joint venture existed. In any event, because Perry is immune from liability under the equine immunity statute, Gilbert may not be found vicariously liable for his

alleged negligence. *See, e.g., Samson v. Riesing,* 62 Wis. 2d 698, 710, 215 N.W.2d 662 (1974).[2]

C. FRIVOLOUS CLAIM AND APPEAL

¶ 18. On cross-appeal, Gilbert argues the circuit court erred by failing to sanction the Kangases for a frivolous claim. In order to impose sanctions against a party for frivolous claim under WIS. STAT. § 814.025, the court must find one of the following:

(a) The action, special proceeding, counterclaim, defense or cross complaint was commenced, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.

(b) The party or the party's attorney knew, or should have known, that the action, special proceeding, counterclaim, defense or cross complaint was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

WIS. STAT. § 814.025(3).

¶ 19. The inquiry into whether a claim is frivolous under the statute is a mixed question of law and fact. *See Stern v. Thompson & Coates, Ltd.,* 185 Wis. 2d

---

[2] In *Samson v. Riesing,* 62 Wis. 2d 698, 710, 215 N.W.2d 662 (1974), our supreme court recognized that "[v]icarious liability . . . and joint venture are essentially doctrines that are applicable to a situation where the negligence of one party is proved and it is sought to hold another party liable." The court further recognized that these doctrines are of no assistance to a plaintiff "where the onus of negligent conduct has not been placed on any defendant." *Id.*

220, 236, 517 N.W.2d 658 (1994). A trial court's findings of fact will be affirmed unless they are clearly erroneous. *See Sellers v. Sellers*, 201 Wis. 2d 578, 586, 549 N.W.2d 481 (Ct. App. 1996); *see also* WIS. STAT. § 805.17(2). However, "the ultimate conclusion of whether the facts cited fulfill the legal standard of frivolousness is a question of law" that this court reviews de novo. *Stern*, 185 Wis. 2d at 236. Further, "[a]n appellate court must accept a reasonable inference drawn by the trial court from established facts if more than one reasonable inference may be drawn." *Id.* at 237. However, "[w]hether an inference is reasonable is itself a question of law." *Id.*

¶ 20. In refusing to find the Kangases' claim frivolous, the circuit court noted that although Gilbert did not directly share in the profits of the claimed venture, there was no case law requiring that any profits be shared directly, rather than indirectly. We agree that a good faith argument for the existence of the joint venture could have been made.[3]

¶ 21. Gilbert also moves this court for fees and costs for frivolous appeal. This court decides, as a mat-

[3] Gilbert stresses that despite deposition testimony establishing that Gilbert neither owned nor maintained the sled, the Kangases nevertheless filed suit alleging she was negligent in the design and maintenance of the sled. Gilbert further stresses that the Kangases did not even allege the existence of a joint venture in their complaint, but rather, first argued this theory in their response to the summary judgment motions. The Kangases' argument for the existence of a joint venture may be characterized as nothing more than zealous advocacy. All doubts about whether a position is frivolous are resolved against a conclusion of frivolousness, so as not to discourage an attorney's obligation to undertake innovative positions or the zealous advocacy of a client. *See Stern v. Thompson & Coates, Ltd.*, 185 Wis. 2d 220, 235, 517 N.W.2d 658 (1994).

ter of law, whether an appeal is frivolous. *See NBZ, Inc. v. Pilarski*, 185 Wis. 2d 827, 841, 520 N.W.2d 93 (Ct. App. 1994). In order to impose sanctions against a party for a frivolous appeal under WIS. STAT. § 809.25(3), we must determine whether one or more of the following exist:

1. The appeal or cross-appeal was filed, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.

2. The party or the party's attorney knew, or should have known, that the appeal or cross-appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

WIS. STAT. § 809.25(3)(c).

¶ 22. Again, because Gilbert has failed to cite case law requiring that the members of a joint venture share directly, rather than indirectly, in the profits of the venture, we conclude that the Kangases made a good faith argument for the existence of a joint venture and conclude that their appeal was not frivolous under WIS. STAT. § 809.25(3).[4]

*By the Court.*—Judgment affirmed.

---

[4] Although the parties make alternative arguments regarding the recreational immunity statute, WIS. STAT. § 895.52, its applicability is not dispositive of this case. We therefore refrain from addressing it. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (only dispositive issues need be addressed).