In the

# United States Court of Appeals

### For the Seventh Circuit

_____

Nos. 17-2485 & 17-2970

JUDY DILLEY,

*Plaintiff-Appellant,*

*v.*

HOLIDAY ACRES PROPERTIES, INC.,
and STEVE KRIER,

*Defendants-Appellees.*

_____

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 16-cv-91-jdp — **James D. Peterson**, *Chief Judge.*

_____

No. 17-3289

ABIGAIL E. BROWN,

*Plaintiff-Appellant,*

*v.*

COUNTRY VIEW EQUESTRIAN CENTER, INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 17-cv-342-bbc — **Barbara B. Crabb**, *Judge*.

————————————

ARGUED FEBRUARY 23, 2018 — DECIDED SEPTEMBER 25, 2018

————————————

Before FLAUM, SYKES, and HAMILTON, *Circuit Judges*.

SYKES, *Circuit Judge*. Judy Dilley and Abigail Brown were injured while horseback riding in Wisconsin. Both women are citizens of other states, so they sued the trail and stable operators in federal court in western Wisconsin asserting claims of negligence. They lost at summary judgment and on the pleadings, respectively. Their appeals, which we have consolidated for decision, require us to interpret and apply Wisconsin's equine-immunity statute. With certain exceptions, the statute blocks recovery for injuries that result from "an inherent risk of equine activities." WIS. STAT. § 895.481(2). The courts below held that the equine-immunity statute bars their claims.

We affirm. Dilley's claims fall within the scope of the statutory immunity because a trail operator's negligence is an "inherent risk of equine activities" as that phrase is defined in the statute. And no exception to immunity applies. The trail operators reasonably assessed Dilley's ability to ride a horse and to safely manage the particular horse they assigned to her; they did not act in willful or wanton disregard of her safety; and the tack they provided was not faulty. Brown concedes that her claim falls within the scope of immunity but invokes an exception that applies if the

defendant provided a horse for the plaintiff. Because Brown rode her own horse, that exception is unavailable.

## I. Background

Dilley's suit comes to us from a summary judgment, *see* FED. R. CIV. P. 56, so we construe the facts in the light most favorable to her and draw all reasonable inferences in her favor. Steve Krier operates Holiday Stables, a trail-riding facility in Rhinelander, Wisconsin. Holiday Acres Properties, Inc., which owns and operates an adjacent vacation resort, owns the property on which Holiday Stables operates.

Judy Dilley reserved a ride at Holiday Stables on July 17, 2015. She informed Krier when she made the reservation that she had no horseback-riding experience. On the day of the ride, Krier's employee Nicole Kremsreiter asked Dilley if she had ridden a horse before. Dilley, who was then in her mid-sixties, told Krier and Kremsreiter that she had no recollection of riding a horse, though she may have done so when she was a child. So Krier matched Dilley with Blue, his most docile horse and one he typically assigned to small children.

Prior to the ride, Dilley received no instruction from Krier or Kremsreiter on how to ride a horse, and neither of them adjusted the stirrups to fit her body nor provided her with a helmet. Kremsreiter rode in front of Dilley during the trail ride. Partway through the ride Dilley told Kremsreiter that she did not "have ahold of this rope" (meaning the reins). Kremsreiter responded, "Don't worry; this horse knows where it wants [to] go," and never looked back. After 15 or 20 minutes, Blue attempted to pass Kremsreiter's horse. That horse kicked at Blue, prompting Blue to rear up and, in

turn, causing Dilley to fall backward to the ground. She sustained a head injury, fractured ribs and vertebra, and a punctured lung.

Dilley, a citizen of Illinois, sued Holiday Acres and Krier in federal court in the Western District of Wisconsin, invoking the court's diversity jurisdiction and seeking damages for negligence, negligence per se, and willful and wanton conduct. Holiday Acres moved for summary judgment, arguing that Wisconsin's equine-immunity statute barred Dilley's claims. The judge agreed. He then invited Dilley to explain why her claims against Krier were not also barred. Following additional briefing, the judge entered judgment for both defendants, holding that the statute blocked Dilley's claims by conferring immunity on the sponsors and participants in equine activities for injuries that result from "an inherent risk of equine activities," WIS. STAT. § 895.481(2), and defining that risk to include any participant's negligence, *see id.* § 895.481(1)(e)4. The judge also ruled that no exception to immunity applied because Krier and Kremsreiter reasonably assessed Dilley's ability to engage in horseback riding in general and to safely manage Blue in particular, and Dilley offered no evidence of willful or wanton conduct or faulty tack.

Abigail Brown also sustained injuries while horseback riding in Wisconsin. Her case comes to us from a dismissal on the pleadings, *see* FED. R. CIV. P. 12(b)(6), so we take the following factual allegations from the complaint, accepting them as true for present purposes. Country View Equestrian Center owns and operates a horseback-riding stable in Monroe, Wisconsin. Brown took a riding lesson from a Country View instructor at its indoor riding facility. She

brought Golden Gift, her own horse, to the facility and rode him during the lesson.

As the lesson proceeded, the instructor allowed a second horse and rider to enter the arena. The instructor was aware that the second horse was "high spirited" and required a very experienced rider. The instructor directed the rider of the second horse to jump a fence in the arena. As the rider turned the horse toward the fence to perform the jump, the horse sped off, bucking and leaping out of control until it collided with Golden Gift. Brown was thrown from her horse and sustained multiple leg fractures.

Brown, a citizen of Missouri, sued Country View in federal court in the Western District of Wisconsin, invoking the court's diversity jurisdiction and seeking damages for negligence. Country View moved to dismiss the complaint based on the equine-immunity statute. Brown conceded that her claim fell within the general scope of the immunity conferred by the statute. She invoked an exception for claims against a person who "[p]rovides an equine to a person" but fails to reasonably assess the person's ability to "engage safely in an equine activity or to safely manage the particular equine provided." WIS. STAT. § 895.481(3)(b). But Brown was injured riding *her own horse*—not one provided by Country View—so the judge ruled that the exception was inapplicable and dismissed the complaint.

Dilley and Brown appealed. We scheduled their cases for argument on the same day and now consolidate them for decision.

## II.  Discussion

### A.  Dilley

We review a summary judgment de novo. *See Laborers'
Pension Fund v. W.R. Weis Co.*, 879 F.3d 760, 766 (7th Cir.
2018). Dilley contends that the equine-immunity statute does
not bar her claims. She first argues that an injury caused by
the negligence of a trail operator falls outside the scope of
equine immunity. That argument cannot be squared with the
statutory text. She next invokes three exceptions to immuni-
ty; however, none applies.

#### 1.  *Scope of Immunity*

Wisconsin's equine-immunity statute blocks recovery for
certain injuries sustained during equine activities. The
statute establishes a broad rule of immunity and carves out
several exceptions. Here is the general immunity rule:

> [A] person, including an equine activity spon-
> sor or an equine professional, is immune from
> civil liability for acts or omissions related to his
> or her participation in equine activities if a per-
> son participating in the equine activity is in-
> jured or killed as the result of an inherent risk
> of equine activities.

§ 895.481(2). The term "[i]nherent risk of equine activities"
means "a danger or condition that is an integral part of
equine activities." WIS. STAT. § 895.481(1)(e). The statute then
provides a nonexclusive list of five risks that fit within that
broad definition. Relevant here is "[t]he potential for a
person participating in an equine activity to act in a negli-
gent manner." § 895.481(1)(e)4.

Dilley argues that the negligence of a trail operator (like Krier and Kremsreiter) is not an inherent risk of horseback riding because it is avoidable and therefore not an "integral part" of the activity. § 895.481(1)(e). The statutory text forecloses that argument. As we've just noted, the statute's enumeration of immunized risks includes the "potential for a person participating in an equine activity to act in a negligent manner." § 895.481(1)(e)4. The term "equine activity" broadly includes (among other things): "[r]iding, training, or driving an equine or being a passenger on an equine" and "[a]ssisting a person participating" in any of those activities. WIS. STAT. § 895.481(1)(b)5, (1)(b)9. Krier plainly assisted Dilley in an equine activity when he scheduled the trail ride and selected a horse for her to ride, and Kremsreiter did so when she led the ride. Dilley's claim fits squarely within the scope of the statutory immunity.

**2. *Exceptions to Immunity***

After demarcating the scope of immunity, the statute lists various exceptions. Dilley draws our attention to three. She first invokes exception (3)(b), which applies when a person

> [p]rovides an equine to a person and fails to make a reasonable effort to determine the ability of the person to engage safely in an equine activity or to safely manage the particular equine provided based on the person's representations of his or her ability.

§ 895.481(3)(b). Everyone agrees that Krier and Kremsreiter provided a horse to Dilley, but that is where the agreement ends.

Holiday Acres reads the exception as abrogating immunity when an equine provider fails to make a reasonable effort to assess the rider's ability to do two things: (1) "engage safely in an equine activity" as a general matter and (2) safely "manage the particular equine provided." *Id.* Dilley proposes a different interpretation. In her view the exception applies when the provider of a horse fails to reasonably assess the rider's ability to engage safely in an equine activity and *the provider* fails to safely manage the horse. As Dilley sees it, immunity is abrogated in her case because Krier and Kremsreiter did not safely manage Blue.

The Wisconsin Supreme Court has not had occasion to address exception (3)(b). The state court of appeals has done so, but its decisions point in opposite directions. *Compare Hellen v. Hellen*, 831 N.W.2d 430, 436 n.8 (Wis. Ct. App. 2013) ("[T]he statute speaks in terms of a reasonable effort to make two related but different determinations: the ability of the person provided with an equine to engage safely in an equine activity, and his or her ability to safely manage the particular equine provided."), *with Mettler ex rel. Burnett v. Nellis*, 695 N.W.2d 861, 863–64 (Wis. Ct. App. 2005) ("Whether [the defendant] is entitled to immunity turns on whether the exception to equine immunity applies: did [the defendant] safely manage the horse on the day of the accident in light of [the plaintiff's] ability and experience?"). Without clear or consistent guidance from the intermediate appellate court, we're on our own in predicting how the Wisconsin Supreme Court would interpret the statute.

That task is not difficult. Only Holiday Acres' reading accords with the text and structure of the statute. To begin, the general grant of immunity broadly covers injuries resulting

from the "[i]nherent risk of equine activities," which specifically includes "[t]he potential for a person participating in an equine activity … to fail to control the equine." § 895.481(1)(e)4. We see no meaningful difference between failing to "control" a horse and failing to "safely manage" one, so if Dilley's proposed interpretation of exception (3)(b) is correct, it creates significant internal tension within the statute.

Moreover, exception (3)(b) plainly centers on the provider's assessment of the *rider's* abilities. The exception lifts immunity when an equine provider fails to make a "reasonable effort to determine *the ability of the person* to engage safely in an equine activity or to safely manage the particular equine provided *based on the person's* representations of his or her *ability*." § 895.481(3)(b) (emphases added). Exception (3)(b) is thus textually limited to cases in which an equine provider negligently fails to ascertain *the rider's ability* to ride a horse or to safely manage the specific horse provided based on *the rider's representations of his ability*. It does not abrogate immunity for *a provider's* negligent management of a horse. Courts in other states have understood similarly worded exceptions in this way. *See Taylor v. Howren*, 606 S.E.2d 74, 76 (Ga. Ct. App. 2004); *Estes v. Stepping Stone Farm, LLC*, 160 So. 3d 299, 306 (Ala. Civ. App. 2014).

Dilley argues in the alternative that even if Holiday Acres' interpretation is correct, Krier and Kremsreiter failed to reasonably assess her ability to engage safely in equine activity and to safely manage Blue. The record does not support this contention. It's undisputed that before the trail ride began, Krier and Kremsreiter specifically determined that Dilley was a beginner. Dilley does not explain what

more they should have done to determine her ability to ride a horse. She points to Krier's deposition testimony in which he admitted that he does not normally ask riders to demonstrate their riding ability by taking a lap around the paddock before the trail ride begins. But exception (3)(b) refers to the provider's assessment of the rider's horseback-riding ability "based on the person's representations of his or her ability"—*not* an actual demonstration or a test ride.

Beyond that, Dilley merely laments that Krier and Kremsreiter failed to give her riding instructions. But exception (3)(b) does not cover claims of negligent failure to instruct. It applies only when an equine provider fails to make a reasonable effort to determine a rider's general experience level and assign a horse commensurate with that experience. Nothing like that happened here. There's no dispute that Krier and Kremsreiter asked Dilley about her experience, learned that she had none, and accordingly paired her with Blue, the most docile horse in their stable and the one usually assigned to small children. Dilley argues that Kremsreiter failed to *re*assess her ability to safely manage Blue while the ride was underway, especially after she told her she did not "have ahold" of the reins. This argument assumes that exception (3)(b) covers a provider's negligent failure to *continuously* assess a rider's ability for the entire duration of the ride. But nothing in the text suggests that the exception applies if the provider fails to periodically reevaluate how the rider is doing. Rather, the exception focuses on the moment when the equine provider matches the rider with a particular horse.

Next, Dilley invokes an exception that removes immunity if the defendant "[a]cts in a willful or wanton disregard

for the safety of the person." § 895.481(3)(d). This exception applies, she contends, because she was a novice horseback-rider in her mid-sixties, and Krier and Kremsreiter allowed her to ride without either instructions or a helmet.

The "willful or wanton" exception has not been the subject of any published state appellate decision, so we're left to draw on how the Wisconsin Supreme Court has defined this term in other contexts. The phrase comes up in cases involving claims for punitive damages. At one time, if a plaintiff proved that the defendant acted in "wanton, willful, or reckless disregard of [his] rights or interests," the jury could award punitive damages. *Loveridge v. Chartier*, 468 N.W.2d 146, 159 (Wis. 1991). Two types of conduct satisfied that standard:

> The first type is that in which the defendant desires to cause the harm sustained by the plaintiff, or believes that the harm is substantially certain to follow his conduct. With the second type of conduct the defendant knows, or should have reason to know, not only that his conduct creates an unreasonable risk of harm, but also that there is a strong probability, although not a substantial certainty, that the harm will result but, nevertheless, he proceeds with his conduct in reckless or conscious disregard of the consequences.

*Id.* (quotation marks omitted).

The immunity statute's exception for "willful or wanton" disregard of safety does not include recklessness, so it is more demanding than the standard described in *Loveridge*.

But the conduct at issue here does not satisfy even *Loveridge*'s less exacting standard. Nothing in the record supports a finding that Krier or Kremsreiter were aware (or should have been aware) of a "strong probability" that Dilley would be harmed.

Dilley's argument rests largely on her deposition testimony that she alerted Kremsreiter partway through the ride that she could not reach the horse's reins and Kremsreiter replied, "Don't worry; this horse knows where it wants [to] go." Perhaps that was negligent, but it's not enough to show that she disregarded an obvious "strong probability" of harm. The failure to provide a helmet likewise does not meet the "willful or wanton" standard. It may affect the severity of an injury in the event of an accident, but it does not create a strong probability that an accident will occur. And no evidence suggests that Dilley's age should have alerted Krier and Kremsreiter to a strong probability of harm.

Last, Dilley relies on an exception that applies when the defendant "[p]rovides equipment or tack that he or she knew or should have known was faulty and the faulty equipment or tack causes the injury or death." § 895.481(3)(a). Dilley complains only that no one adjusted her stirrups. She does not claim that her stirrups—or any other equipment or tack—were defective in any way. This exception plainly does not apply.

Because the equine-immunity statute blocks Dilley's claims, the judge correctly entered judgment for Holiday Acres and Krier.[1]

---

[1] Our holding makes it unnecessary to address Dilley's arguments about apparent agency and the judge's ruling striking her expert's report.

**B. Brown**

We review the dismissal of Brown's complaint de novo. *Collins v. Village of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017). Like Dilley, Brown argues that her claim fits within exception (3)(b), but in her case the argument is a complete non-starter. The exception applies only if the defendant "provides" a horse to a rider. § 895.481(3)(b). Brown brought her own horse, Golden Gift, to Country View and rode him during the lesson.

Brown argues that Country View "provided" Golden Gift because its instructor exercised control over the lesson and accepted Golden Gift into the arena. That's a far-fetched interpretation of the exception. In ordinary English, "provide" means "to supply or make available." *Provide*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003). A horseback-riding student who brings his own horse for a lesson supplies the horse; the instructor does not. Indeed, Brown's complaint betrays just how bizarre her argument is: she affirmatively alleged that she "*provided* her own horse to be used in the private lesson." (Emphasis added.) Brown has pleaded herself out of the exception.

To bolster her argument, Brown relies on *Barritt v. Lowe*, 669 N.W.2d 189, 190 (Wis. Ct. App. 2003), but that case does not help her. In *Barritt* a riding instructor sold the plaintiff a horse named Cowboy, and the plaintiff boarded the horse at the instructor's stables. Weeks later when the plaintiff was retrieving Cowboy from his pen, another horse attacked him, and she sustained injuries in the process. The plaintiff sued the instructor, invoking exception (3)(b) and insisting that the instructor "provided" Cowboy—one of the two horses involved in the accident—by selling him to her weeks

earlier. The court rejected that strained interpretation, con-cluding that the phrase "provides an equine" in excep-tion (3)(b) means "to make available for use an equine that the provider either owns or controls." *Id.* at 193. Because the instructor gave up all ownership and control of Cowboy when she sold him to the plaintiff, the exception did not apply.

Seizing on the phrase "owns or controls," Brown reads *Barritt* as support for her claim that exception (3)(b) applies here because Country View's instructor "controlled" the riding lesson. Not so. *Barritt* holds that to "provide an equine" for purposes of the exception means that the de-fendant owned or controlled the equine in question *and* made it available for the plaintiff's use. A riding instructor does not "provide" a horse *owned by the riding student* merely by exercising control over the riding lesson.

Brown argues unpersuasively that reading the exception to exclude her situation is "irrational and illogical." In her view it's irrational to abrogate immunity when a riding instructor provides a horse to a student without a reasonable effort to match the horse to the student's ability but to leave immunity intact when the student rides his own horse. She does not explain why this line-drawing is irrational. It strikes us as entirely reasonable that a rider who owns his own horse should bear the risk of a mismatch between his riding ability and his horse's temperament. As importantly, the immunity statute and its exceptions necessarily entail policy judgments about how much exposure to liability is too much in this sphere of recreational activity. Unless the statute admits of no rational justification, it's not our job to

second-guess how Wisconsin's legislature has drawn these lines.

In short, nothing in the statutory text or caselaw supports Brown's reading of exception (3)(b). The judge was right to dismiss her complaint.[2]

AFFIRMED.

---

[2] Alternatively, Brown asks us to "remand this matter … with leave to allow her to file an amended complaint." On appeal she proposes to add a conclusory allegation that the defendant acted with "willful and wanton disregard" for her safety. As we've explained, that's an exception to the statutory immunity. But if Brown wanted to rely on the exception, she could and should have raised it in the district court. She did not seek leave to amend or otherwise alert the judge to the substance of a proposed amendment, so her request for a remand for this purpose is improper. *See Hagan v. Quinn*, 867 F.3d 816, 829 n.6 (7th Cir. 2017) (affirming dismissal with prejudice; the plaintiffs' request for leave to amend the complaint did not explain the proposed revisions or offer a proposed amended complaint); *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 359 (7th Cir. 2016) (explaining that the district court did not err by failing to order, sua sponte, an amendment of the complaint that the plaintiff did not seek); *James Cape & Sons Co. v. PCC Const. Co.*, 453 F.3d 396, 400–01 (7th Cir. 2006).