In the

# United States Court of Appeals

## For the Seventh Circuit

---

Nos. 16-2079 & 16-2944

LABORERS' PENSION FUND and
JAMES S. JORGENSEN,

*Plaintiffs-Appellants/*
*Cross-Appellees,*

*v.*

W.R. WEIS COMPANY, INC.,

*Defendant-Appellee/*
*Cross-Appellant.*

---

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 15 C 07867 — **Edmond E. Chang**, *Judge.*

---

ARGUED JANUARY 12, 2017 — DECIDED JANUARY 8, 2018

---

Before BAUER, SYKES, and HAMILTON, *Circuit Judges.*

SYKES, *Circuit Judge.* The Laborers' Pension Fund adminis-
ters the pension fund for the Laborers' International Union
of North America. W.R. Weis Company, a Chicago-area
stonework firm, was required by a collective-bargaining

agreement to contribute to the Fund for each hour worked by members of the Laborers' Union. The company complied with this obligation for many years. Over time, however, the firm transitioned to using more highly skilled marble setters and finishers on its jobs, so it gradually stopped hiring members of the Laborers' Union and ceased paying into the Fund. In 2012 the Weis Company terminated its collective-bargaining agreement with the Laborers' Union.

The Fund, a multiemployer pension plan governed by ERISA and the Multiemployer Pension Plan Amendment Act ("MPPAA"), served notice that the Weis Company owed more than $600,000 in withdrawal liability for ceasing to contribute to the Fund. The company paid the assessment but challenged it via arbitration, invoking an exemption for the building and construction industry. *See* 29 U.S.C. § 1383(b). The arbitrator agreed with the company, and a district judge confirmed the award but denied the Weis Company's motion for attorney's fees.

Both sides appealed. The Fund seeks de novo review of the arbitrator's award, raising a legal argument about the language and purpose of the § 1383(b) exemption. The Weis Company responds that the deferential clear-error standard applies because the parties treated their dispute as entirely factual, as did the arbitrator. The Weis Company is right: the Fund waived its statutory-interpretation argument by failing to raise it in the arbitration. And because the Fund has not meaningfully challenged the arbitrator's factual determinations, which easily survive clear-error review in any event, we affirm the judgment. Finally, we reject the cross-appeal because the judge did not abuse his discretion in denying the Weis Company's motion for attorney's fees.

## I. Background

The Weis Company does stone work in public, commercial, and private buildings in the Chicago area and is involved in all stages of the construction process. The company is a union employer and has been since its founding in 1991. As relevant here, it was party to two collective-bargaining agreements, one with the International Union of Bricklayers and Allied Craftsmen and one with the Laborers' Union. By longstanding trade custom and practice, laborers assist bricklayers at construction sites. They mix mortar, unload the building material, erect scaffolding, work forklifts, handle the stone before the bricklayers install it, and clear debris. The Weis Company exclusively employed bricklayers and laborers on a one-to-one basis for more than a decade.

In 2002 the bricklayers' union merged with the marble masons' union, which meant that the Weis Company could now hire marble masons, also known as setters, if it wished. Just as laborers assist bricklayers, marble finishers assist marble setters. The duties of a marble finisher overlap in part with those of a laborer—both can unload trucks, shake out stone, prepare marble pieces, and clear debris. But finishers can also cut, polish, grout, caulk, drill holes, apply epoxy, and patch stones. In other words, finishers are more versatile and more highly skilled than laborers. And the marble masons' collective-bargaining agreement—binding on the Weis Company after the unions merged—required that an employer hire one finisher for each setter on a job.

In 2003 the Weis Company won a contract to install an intricate marble interior in a Chicago building. In accordance with its practice at the time, the company employed brick-

layers and laborers to do the job. The customer rejected the work, however, and the Weis Company had to hire marble setters and finishers to redo it. Thereafter the company began hiring marble setters and finishers in addition to bricklayers and laborers. In 2009 the company completely stopped hiring bricklayers (and their attendant laborers) and began relying solely on marble setters (and their attendant finishers). In 2012 the Weis Company formally terminated its collective-bargaining agreement with the Laborers' Union.

Under the terms of that agreement, the Weis Company made pension contributions to the Fund of $8.57 per hour "for each hour worked by all Employees covered by this Agreement." While the agreement was in effect, the Weis Company consistently made these payments to the Fund for the hours worked by laborers in its employ. The company made similar payments to the bricklayers' pension fund for the hours worked by bricklayers, marble setters, and marble finishers in accordance with the terms of its collective-bargaining agreement with that union. When the company stopped hiring laborers in 2009, however, it stopped making payments to the Laborers' Fund. The Fund continued to send the Weis Company monthly contribution reminders, but the company returned them without payment with an explanatory "No Work" notation written across the face of the document.

During this period, the Fund twice audited the company to confirm its compliance with any required contributions. The Fund's 2011 audit covered the years 2007–2011. The company provided the auditor copies of all its contributions to the Fund as well as its contributions to other union pension funds. The audit concluded that the company had

"complied with its fringe benefit contribution require-ments," acknowledging that it hadn't paid a penny to the Fund since 2009 when it stopped hiring laborers and transi-tioned to using setters and finishers exclusively. The Fund later completed a second audit of the company for the years 2011–2012. Again the audit determined that the company "complied with its obligations to the Union and its related Funds," even though the company hadn't contributed anything during the relevant period.

The Weis Company formally terminated its collective-bargaining agreement with the Laborers' Union in 2012. In December of that year, the Fund informed the company that it owed additional contributions under ERISA and the MPPAA for withdrawing from the multiemployer plan. The Fund initially assessed an estimated withdrawal liability of $488,780.33, calculated from the time the company terminat-ed its collective-bargaining agreement with the Laborers' Union. The Weis Company submitted a request for review under ERISA, arguing that it was entitled to an exemption from withdrawal liability under the MPPAA for employers in the building and construction industry. The exemption provides that for employers in these trades, withdrawal liability occurs *only* if the employer "ceases to have an obligation to contribute under the plan" but "continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previ-ously required." 29 U.S.C. § 1383(b)(2). In its request for review, the Weis Company noted that it had not employed members of the Laborers' Union since late 2009. In response the Fund sent a revised demand letter adjusting the compa-ny's withdrawal date from 2012 to October 2009 and increas-ing the claimed liability to $619,209.

The Weis Company paid the assessment but challenged it in arbitration.[1] *See id.* § 1401(a)(1) ("Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination" of withdrawal liability "shall be resolved through arbitration."). The arbitrator found for the company, ruling that it was exempt from withdrawal liability under § 1383(b). As an alternative and independent ground for her decision, the arbitrator also determined that the company had proved the affirmative defense of estoppel. The arbitrator ordered the Fund to refund the Weis Company's payment.

The Fund sued to vacate the arbitration award, and the Weis Company counterclaimed to confirm it. On cross-motions for summary judgment, the district judge agreed with the arbitrator that the nub of the dispute was whether the company "continue[d] to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required." *Laborers' Pension Fund v. W.R. Weis Co.*, 180 F. Supp. 3d 540, 550 (N.D. Ill. 2016). The judge acknowledged, as had the arbitrator,

---

[1] Under the "pay now, dispute later" rule for withdrawal liability, an employer must pay the disputed amount even if it challenges liability. 29 U.S.C. § 1399(c)(2) ("Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor … notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule."). The Weis Company made two installment payments of $43,620.25 each before refusing to make additional payments in light of the scheduled arbitration. The Fund sued to collect the full withdrawal liability, and the district court ordered the company to make the payment. *See Laborers' Pension Fund v. W.R. Weis Co.*, 180 F. Supp. 3d 540, 547 (N.D. Ill. 2016) (citing No. 13 C 6698, 2014 WL 5488387 (N.D. Ill. Oct. 30, 2014)). It did so. *Id.*

that the company had continued to perform work within the jurisdiction of the Laborers' Union collective-bargaining agreement. That is, the work performed by marble finishers overlapped, at least in part, with the work performed by laborers as described in the agreement. *Id.*

But that was not enough, by itself, to trigger withdrawal liability. The judge went on to consider whether "contributions were *previously required* for that work," *id.*, and agreed with the arbitrator that the language in the parties' collective-bargaining agreement was ambiguous. The Fund's trust instrument, which established the pension fund and is incorporated by reference into the collective-bargaining agreement, contains arguably broader language on this point than the collective-bargaining agreement. *Id.* at 551. Accordingly, the judge held that the arbitrator properly looked "beyond the document itself … to the parties' 'practice, usage and custom'" to resolve the ambiguity. *Id.* (quoting *Bhd. of Maint. of Way Emps. v. Atchison, Topeka & Santa Fe Ry. Co.*, 138 F.3d 635, 640–41 (7th Cir. 1997)). Applying clear-error review, the judge found no reason to displace the arbitrator's analysis of the parties' "historical course of dealing," which revealed that the Fund "had *not* previously required [the Weis Company] to make contributions for any work performed by bricklayers, marble setters, or finishers." *Id.* at 552. The judge confirmed the arbitration award. *Id.*

The Weis Company then moved for an award of attorney's fees, which are allowed under ERISA to the prevailing party in the district court "unless the loser can show that its position was substantially justified." *Cont'l Can Co. v. Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund*, 921 F.2d 126, 127 (7th Cir. 1990) (internal

quotation marks omitted). The judge declined to award fees, holding that the Fund's position was substantially justified based on the ambiguity in the relevant contract provisions and the fact-sensitive nature of the inquiry into the parties' history, custom, and past practice. Both sides appealed.

## II. Discussion

We review a summary-judgment ruling de novo, applying "the same standards as the court below and viewing the record and all reasonable inferences to be drawn from it in the light most favorable to the nonmoving party." *Cent. States, Se. & Sw. Areas Pension Fund v. Midwest Motor Exp., Inc.*, 181 F.3d 799, 804 (7th Cir. 1999). In this context, the de novo standard means that we're reviewing the arbitrator's decision. That inquiry, in turn, is governed by a split standard of review: The arbitrator's findings of fact may be set aside only if clearly erroneous; "[t]he same standard holds for the arbitrator's application of law to fact"; and "[t]he arbitrator's legal conclusions are subject to *de novo* review." *Id.* at 804–05 (citations omitted).

## A. Withdrawal Liability

The Fund's sole argument on appeal is that the arbitrator misinterpreted § 1383(b)(2)(B)(i) to contain a course-of-dealing requirement. Recall that an employer in the building and construction industry is subject to withdrawal liability *only if*, after its contribution obligation ceases, it "continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required." § 1383(b)(2)(B)(i). The Fund argues that the arbitrator misread the phrase "previously required" to mean "previously collected by the plan," which it says

cannot be reconciled with either the language of the statute or Congress's purpose to disincentivize pension-fund withdrawals and preserve the funding base of multiemployer pension funds.

The main problem with this argument is that the Fund waived it by failing to raise it before the arbitrator. Both sides acknowledged in the arbitration proceeding that liability would turn on the arbitrator's reading of the collective-bargaining agreement; there was no quarrel about the meaning of the statute. The Fund's primary argument was that the collective-bargaining agreement required pension-fund contributions for all "employees doing covered work," while the Weis Company argued that the agreement required contributions only for "hours worked by Laborers." Standing alone, the collective-bargaining agreement supported the company's position, but the trust instrument— incorporated by reference into the agreement—contained somewhat broader language. The arbitrator accordingly found that the agreement was ambiguous and turned to the parties' historical practice to resolve the ambiguity. At no time was she presented with a legal dispute about the meaning of the statute. Because the Fund never raised its statutory-interpretation argument in the arbitration, the issue is waived. *Bowers v. Andrew Weir Shipping, Ltd.*, 27 F.3d 800, 808 (2d Cir. 1994) ("[W]hatever merit the [employer's omitted argument] may or may not have, it must first be made to the arbitrator. Not having been so made, the argument was waived.").

Even if it hadn't been waived, the Fund's statutory-interpretation argument suffers from another fundamental flaw. The arbitrator did precisely what the Fund argues the

statute requires, as noted at length in the district judge's
decision:

> [T]he Fund argues that the [a]rbitrator erred in
> interpreting the withdrawal liability statute by
> concluding that "previously required" under
> 28 U.S.C. § 1383(b)(2)(B)(i) meant "previously
> collected by the plan," as opposed to "previ-
> ously required by the collective bargaining
> agreement." But this is not so. As explained
> above, the award adopted the latter construc-
> tion[] and then looked to the [collective-
> bargaining agreement] to determine the em-
> ployers' obligations. In making that determina-
> tion—that is, in interpreting the [collective-
> bargaining agreement]—what the Fund previ-
> ously collected appropriately informed the
> award's decision.

*W.R. Weis Co.*, 180 F. Supp. 3d at 552–53 (citations omitted).

In other words, there is no daylight between the Fund's
interpretation of the statute and the approach adopted by
the arbitrator. Everyone agreed that the collective-
bargaining agreement was paramount to the determination
of withdrawal liability. Again, the parties disagreed about
the meaning of the collective-bargaining agreement, not the
statute. And because the arbitrator determined that the
agreement was ambiguous, she turned to the parties' histori-
cal collection practices to resolve the ambiguity; her factual
findings on that point are reviewed deferentially, for clear
error only. *Aeroground, Inc. v. CenterPoint Props. Tr.*, 738 F.3d
810, 813 (7th Cir. 2013).

Remarkably, the Fund has not challenged the arbitrator's findings regarding the collective-bargaining agreement, so our review can be brief. The agreement required the Weis Company to "make a pension contribution of $8.57 per hour for each hour worked *by all Employees covered by this Agreement* in addition to the wages and welfare payments herein stipulated." (Emphasis added.) Under the same agreement, the company also "agree[d] to be bound by the Agreements and Declarations of Trust establishing the Laborers' Pension Fund, as well as any amendments thereto, and agree[d] to be bound by all actions taken by the Trustees of that fund pursuant to the Agreements and Declarations of Trust."

The declaration of trust, in turn, defines "Employee" (as relevant here) as the following: (1) any person "covered by a Collective Bargaining Agreement between an Employer and the Union or any of its local affiliates who is engaged in employment with respect to which the Employer is obligated by the Collective Bargaining Agreement to make contributions to the Pension Fund"; or (2) any person "employed by an Employer *who performs work within the jurisdiction of the Union as said jurisdiction is set forth in any applicable Collective Bargaining Agreement* or by any custom or practice in the geographic area within which the Employer operates and his Employees perform work." (Emphasis added.)

These two provisions are in some tension, creating an ambiguity. As the district judge explained, the term "Employee" in the collective-bargaining agreement implies that "Fund contributions are only required for employees who are *laborers*[] because the agreement is between [the] employer[] and the General Laborer's District Council of Chicago and Vicinity." *W.R. Weis Co.*, 180 F. Supp. 3d at 551. The

declaration of trust, on the other hand, acknowledges that "Employees" for whom pension-fund contributions are made may well be workers covered by the agreement, but it implies that an additional type of worker is covered—anyone who performs work within the jurisdiction covered by the agreement. Based on this apparent discrepancy, the arbitrator looked to the parties' historical practice to determine if contributions were "previously required."

The Fund's opening brief in this court did not challenge the arbitrator's interpretation of the collective-bargaining agreement or her factual findings about the parties' course of conduct. The Fund admitted as much in its reply brief, but argued that it should be allowed to belatedly challenge those findings because it would simply be "respond[ing] to arguments raised by Weis in its [r]esponse [b]rief." Our standard is clear: Arguments raised for the first time in a reply brief are waived. *Dexia Crédit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010).

We are left then with the arbitrator's unchallenged interpretation of an ambiguous contract based on unchallenged factual findings about the parties' historical practice. The arbitrator's award rests primarily on evidence of the two audits in which the Fund declared that the Weis Company was in compliance with its payment obligations for the time period in question. The arbitrator also relied on testimony from Paul Connolly, the business manager and secretary-treasurer for the Laborers' Union. Connolly testified that the Laborers' Union doesn't "go after a contractor based on his contribution on an employee that may be on a different trade that we may consider our work … . We don't do it." *W.R. Weis Co.*, 180 F. Supp. 3d at 552. In other words, the Fund

does not collect contributions from an employer who has already contributed to another union's pension fund for the same work. Or as Connolly more bluntly put it: "[T]he policy of the Fund is that if contributions are made to another fund, then we allow that. We don't go back and try to bang [the Employer] twice." *Id.* The arbitrator credited this evidence and concluded that contributions to the Fund were not "previously required" by the parties' collective-bargaining agreement. That was not clear error.

## B. Attorney's Fees

The Weis Company cross-appealed from the denial of its motion for attorney's fees under § 1451(e) of ERISA, which allows the court to award "all or a portion of the costs and expenses," including "reasonable attorney's fees, to the prevailing party." 29 U.S.C. § 1451(e). That decision is committed to the discretion of the district court and is reviewed only for an abuse of that discretion. *Cent. States, Se. & Sw. Areas Pension Fund v. Sherwin-Williams Co.*, 71 F.3d 1338, 1343 (7th Cir. 1995). An award of fees is presumptively appropriate "when the losing side in arbitration asks a judge to disagree with the award." *Certco, Inc. v. Int'l Bhd. of Teamsters, Local Union No. 695*, 722 F.3d 1097, 1100 (7th Cir. 2013). This is so because "the parties have agreed to resolve their dispute in one forum, and the costs of moving the dispute to a second forum should be borne by the person who initiates the new round." *Id.*

Thus, under ERISA § 1451(e), the prevailing party is ordinarily entitled to an award of fees "unless the loser can show that its position was 'substantially justified.'" *Cont'l Can Co.*, 921 F.2d at 127. The "substantially justified" standard means "something more than non-frivolous, but some-

thing less than meritorious." *Jackson Fin. Corp. v. Humana Ins. Co.*, 641 F.3d 860, 866 (7th Cir. 2011) (quotation marks omitted).

The district judge held that the Fund's position was substantially justified because the "text of the relevant contracts" upon which the case turned "could have been interpreted either in favor of the Fund or against the Fund," and the Fund had a "non-frivolous textual argument supporting its position."[2] The Weis Company points out that the Fund's summary-judgment motion did not develop a robust argument about the proper interpretation of the collective-bargaining agreement. True, it wasn't the main thrust of the Fund's briefing in the district court. But the Fund did raise a contract-based argument in both its opening brief and its reply brief. The judge held that the dispositive issue in the case was a question of contract construction and that both sides offered legitimate interpretations. On that basis the judge concluded that the Fund's position was substantially justified and declined to award fees. That was not an abuse of discretion.

AFFIRMED.

---

[2] The judge also determined that the Fund was substantially justified in challenging the arbitrator's equitable-estoppel holding, particularly because "it is not yet clear whether equitable estoppel is an available defense in an action involving a multiemployer pension plan." We have no need to review the merits of the arbitrator's alternative equitable-estoppel holding or the judge's denial of fees on this ground.